THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:  25-mj-06133-AOV

```
UNITED STATES OF AMERICA,     )
                              )
              Plaintiff,      )
v.                            )              February 26, 2025
                              )
RICHARD VAIRO,                )
                              )              Pages 1 - 25
              Defendant.      )
_____/
```

INITIAL APPEARANCE HEARING

BEFORE THE HONORABLE ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

On behalf of the Plaintiff:

> UNITED STATES ATTORNEY'S OFFICE
> 500 East Broward Boulevard
> Suite 700,
> Fort Lauderdale, FL 33394
> BY:  FRANCESSE L. CHERON, AUSA

2

```
 1
     APPEARANCES CONTINUED:
 2

 3   On behalf of the Defendant:

 4                         FEDERAL PUBLIC DEFENDER'S OFFICE
                           1 East Broward Boulevard
 5                         Suite 1100,
                           Fort Lauderdale, FL 33301
 6                         BY:  WESLEY D. WALLACE, AFPD

 7

 8

 9   Transcribed By:

10                         BONNIE JOY LEWIS, R.P.R.
                           7001 SW 13 Street
11                         Pembroke Pines, FL  33023
                           954-985-8875
12                         caselawrptg@gmail.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (Thereupon, the following proceeding was held:)

 2                    THE COURTROOM DEPUTY:  Calling Case Number

 3     25-mj-06133; the United States of America versus Richard Vairo.

 4                    Counsel, please state your appearances beginning with

 5     the Government.

 6                    MS. CHERON:  Francesse Cheron for the United States.

 7                    THE COURT:  Thank you, Miss Cheron.

 8                    Mr. Vairo, good morning, sir.

 9                    THE DEFENDANT:  (Through interpreter:)  Good morning.

10                    THE COURT:  Mr. Vairo, I want to confirm that you can

11     hear me and understand everything that is going on with the

12     help of the court interpreter who is translating for you.

13                    THE DEFENDANT:  Yes.

14                    THE COURT:  Again, if anything happens and you cannot

15     hear or understand, please let us know so we can fix whatever

16     the problem may be; okay?

17                    THE DEFENDANT:  Yes.

18                    THE COURT:  All right.  Mr. Vairo, first of all, I

19     note that this indictment is sealed.

20                    Do I have an oral motion to unseal it?

21                    MS. CHERON:  Yes, Your Honor.

22                    The Government would move to unseal the indictment,

23     Your Honor.

24                    THE COURT:  Thank you very much.

25                    I will unseal the indictment so I could advise the
```

 1  Defendant of the charges against him.

 2          All right.  So, Mr. Vairo, did you understand all of

 3  the rights that I advised you of when you were seated in the

 4  jury box?

 5          THE DEFENDANT:  Yes.

 6          THE COURT:  Now you are charged in an indictment,

 7  which is the more formal type of accusation.  And the

 8  indictment charges you with ten individual counts of wire

 9  fraud; committing wire fraud.

10          If you are convicted of those ten counts, Mr. Vairo --

11  what is the maximum penalty that Mr. Vairo faces on each count?

12          MS. CHERON:  Yes, Your Honor.  The maximum penalty is

13  20 years on each count.

14          THE COURT:  All right.  So you heard the Government,

15  Mr. Vairo.  Each of those ten counts carries a maximum penalty

16  of up to 20 years.

17          Do you understand that, sir?

18          THE DEFENDANT:  Yes.

19          THE COURT:  That does not mean that you are going to

20  get sentenced 200 years in prison, but that is the maximum

21  penalty that the law allows.  And I tell you the worst case

22  scenario just so that you understand the seriousness of the

23  charges against you.

24          Do you understand that, sir?

25          THE DEFENDANT:  Yes.

1    THE COURT:  And Mr. Vairo, do you have a lawyer to

2 represent you, sir?

3    THE DEFENDANT:  No.

4    THE COURT:  Can you afford to hire your own lawyer?

5    THE DEFENDANT:  Not at this time.

6    THE COURT:  All right.  We will talk a little bit more

7 about appointing a lawyer for you, but the next thing I want to

8 do is advise you a little bit more of your rights because your

9 case is a little different.

10    The charges that I have just described, the

11 indictment, come out of the District of Nevada; the federal

12 court in Nevada.  They are not from this district.

13    Do you understand that, sir?

14    THE DEFENDANT:  Yes.

15    THE COURT:  Now before we can send you back to Nevada

16 to answer those charges, you are entitled to certain other

17 additional rights and I want to advise you of those rights;

18 okay?

19    THE DEFENDANT:  Yes.

20    THE COURT:  First of all, you have the right to have

21 an identity hearing either where the Government has to prove

22 that you are, in fact, Richard Vairo.

23    Do you understand that?

24    THE DEFENDANT:  Yes.

25    THE COURT:  Now, you can choose to have that hearing

```
 1   and have the Government prove that you are, in fact, Richard
 2   Vairo, or you can choose to waive that hearing with the advice
 3   of your attorney once you have one.
 4          Understood?
 5          THE DEFENDANT:  Yes.
 6          THE COURT:  If you choose to waive that hearing and
 7   admit that you are Richard Vairo, you are only admitting your
 8   identity.  You are not admitting guilt as to the charges.
 9          Do you understand that, sir?
10          THE DEFENDANT:  Yes.
11          THE COURT:  You also have the right to have a bond
12   hearing or a detention hearing, as I told you before, but in
13   your case you have to make a decision whether you want to have
14   that bond hearing or detention hearing here in South Florida or
15   in Nevada.
16          You have to make a selection.  You cannot have it in
17   both places.
18          Understood?
19          THE DEFENDANT:  Yes, I understand.
20          THE COURT:  You also have the right to explore the
21   possibility of resolving this case here in South Florida
22   without having to go to Nevada.
23          That is called a Rule 20 transfer, but you can only
24   transfer a case to South Florida if you want to plead guilty to
25   the charges.
```

1          If you want to go to trial, as is your right, you have

2    to do that in Nevada.

3          Understood?

4          THE DEFENDANT:  Yes.

5          THE COURT:  In addition, the case can only be

6    transferred to South Florida if you want to plead guilty.

7          If both the prosecutor in Nevada and the prosecutor

8    here in South Florida both agree to the transfer.

9          Understood?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  In this case, you have an

12    indictment.  The indictment itself establishes probable cause.

13    So you are not entitled to have a probable cause hearing.

14          So those are your rights in connection with your

15    appearance in court and then about being transferred to Nevada.

16          You told me that you cannot afford to hire your own

17    private counsel, correct, Mr. Vairo?

18          THE DEFENDANT:  Yes.

19          THE COURT:  I advised you when you were seated in the

20    jury box of the process for appointing counsel.  I place you

21    under oath, I ask you questions about your finances, and then I

22    determine whether or not you qualify.

23          Do you want me to do that?

24          THE DEFENDANT:  I did not understand.

25          THE COURT:  All right.  In order for me to determine

1 whether I can appoint a lawyer for you at no cost, I have to

2 make the decision whether you qualify.

3          In order for me to determine if you qualify, I place

4 you under oath.  I ask you questions about your finances --

5          THE DEFENDANT:  Yes.

6          THE COURT:  And then, I make the decision whether or

7 not I can appoint a lawyer for you at no cost.

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you want me to do that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Remember what I told you, you have the

14 right to remain silent.  So limit your answer to my financial

15 questions.  That is for your own benefit.

16          Understood?

17          THE DEFENDANT:  Yes.

18          THE COURT:  If you choose to answer my questions, you

19 are free to stop answering at any time.  However, make sure

20 that you do not lie because if you lie under oath the

21 Government can charge you with perjury.

22          Understood?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Understanding all of that, do you wish me

25 to proceed?

1        THE DEFENDANT:  Yes.

2        THE COURT:  Okay.  I will do so.

3        Mr. Vairo, prior to being arrested, were you working,

4 sir?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Where were you working?

7        THE DEFENDANT:  I have a small company and it is

8 called Richard Brazilian -- Your Honor, may the interpreter

9 inquire as to the last word?

10        THE COURT:  Yes.

11        THE DEFENDANT:  Sausages.

12        THE COURT:  Thank you.  I'm sorry.  We forget to swear

13 you in.

14        THE COURTROOM DEPUTY:  Mr. Vairo, if you could please

15 raise your right hand.

16        THE DEFENDANT:  (Complied.)

17 (Defendant sworn.)

18        THE COURTROOM DEPUTY:  Thank you.

19        THE COURT:  All right.  Mr. Vairo, sir, you told me

20 that you have a small company called Richard Brazilian Sausage;

21 is that correct?

22        THE DEFENDANT:  Yes.

23        THE COURT:  How long have you had that company?

24        THE DEFENDANT:  13 years more or less.  I think I

25 started out in September of 2013.  I don't know the exact date.

1    THE COURT:  All right.  So approximately 13 years, you
2  said?
3    THE DEFENDANT:  More or less, yes.
4    THE COURT:  And do you own that company, sir?
5    THE DEFENDANT:  Yes.
6    THE COURT:  And what do you do with the company?
7    THE DEFENDANT:  Food distribution.
8    I purchase and I sell food stuff like -- Your Honor,
9  may the interpreter provide brief instructions to the
10 Defendant?
11   THE COURT:  Please do.
12   THE DEFENDANT:  This company called Richard Brazilian
13 Sausages.  It sells beef, pork, and chicken food stuff.
14   THE COURT:  Alex, you were saying?  I'm sorry.  I just
15 wanted to hear the answer.
16   Mr. Vairo, I am glad that we interrupted because my
17 Court Deputy just advised me that we, the Court, has received a
18 call from an attorney.  The attorney's name -- and I apologize.
19 I don't know how to pronounce it.  The last name is Razan,
20 R-A-Z-A-N and the first name is Faccidom, F-A-C-C-I-D-O-M.
21   And Alex, what did the attorney say?
22   THE COURTROOM DEPUTY:  Judge, they called asking for
23 the charging document.  Unfortunately, because the case is
24 sealed we can't give them that information and they also can't
25 file anything.

```
1          THE COURT:  All right.  So it is unsealed now.

2          But are you aware of your family or someone trying to

3  get a lawyer for you, Mr. Vairo?

4          THE DEFENDANT:  I didn't know.  It could be my

5  daughter or my wife.  I don't know.

6          THE COURT:  All right.  I am going to continue with

7  the colloquy because I don't have anything on the record and

8  Mr. Vairo has told me that he cannot afford counsel.  So we

9  will see where that goes.

10          THE COURTROOM DEPUTY:  Your Honor, would you like me

11  to give him a copy of the charging document now that it has

12  been unsealed?

13          THE COURT:  Please do.  Thank you.

14          That is a copy of the charging document.  That is a

15  copy of the indictment against you that charges you with ten

16  counts of wire fraud.  It is in English, but it will be

17  translated for you at a later time.

18          Mr. Vairo?  Mr. Vairo, I need you to pay attention to

19  me.

20          All right.  Do you understand that what he just gave

21  you is a copy of the charging document?

22          THE DEFENDANT:  Yes.  I was looking at it, but I don't

23  know what it is.

24          THE COURT:  Right.  That is the charging document, the

25  indictment, that was returned against you in Nevada charging
```

1   you with ten counts of wire fraud.  At some point this will be

2   translated for you.

3           In fact, according to the indictment, it alleges that

4   you were involved in a scheme in which you caused a company and

5   an individual with the initials of E.S. to send approximately

6   more than ten million dollars in 29 wire transfers in

7   connection with the sale of certain products to Publix.

8           Anyway, that is just the general allegations against

9   you.  And I don't want to talk about whether your guilt or

10  innocence, but that you understand the nature of the offense

11  and the penalties that you face.

12          Do you understand that, Mr. Vairo?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  So let's go back to the

15  questions I was asking you.

16          How much money do you make on a monthly basis working

17  for this company?

18          THE DEFENDANT:  I have about $5,000.

19          THE COURT:  Is that your monthly salary?

20          THE DEFENDANT:  More or less, yes.  Some months I make

21  less and some months I make more.

22          THE COURT:  All right.  Do you own any property in the

23  United States or elsewhere?

24          THE DEFENDANT:  I have a property, but it is not mine.

25  I am still paying for it.  It belongs to my daughter and my son

```
 1   and my ex-wife Vivi.  And I just signed as a co-signor only to
 2   be able to make payments because I don't live on that property.
 3             THE COURT:  All right.  So you don't live in that
 4   property and you also don't own that property, correct?
 5             THE DEFENDANT:  Correct.
 6             THE COURT:  The property is in somebody else's name,
 7   your daughter, your son, and your ex-wife, correct?
 8             THE DEFENDANT:  It's in my ex-wife's name, but the
 9   people that live there are my daughter, my son, and my ex-wife.
10             THE COURT:  All right.  Thank you very much.  So that
11   is not your property.
12              Do you own any property?
13             THE DEFENDANT:  No.
14             THE COURT:  Either here or anywhere else?
15             THE DEFENDANT:  I don't.
16             THE COURT:  Do you own a car, a truck, a vehicle of
17   any kind?
18             THE DEFENDANT:  Yes.  I have a Tesla, Model I, 2024.
19   I am paying for it.
20             THE COURT:  Did you put a down-payment on that car?
21             THE DEFENDANT:  Yes.
22             THE COURT:  How much was the down-payment?
23             THE DEFENDANT:  $10,000 because I also turned in
24   another car that I had and now I make monthly payments.  So
25   $498.
```

1      THE COURT:  So you put down $3,000 cash and you turned

2  in, traded in another car, correct?

3      THE INTERPRETER:  Your Honor, from the interpreter.  I

4  apologize.  It was $10,000.

5      THE COURT:  Oh, $10,000.  Thank you.

6      THE DEFENDANT:  And now I am paying $498 per month.

7      THE COURT:  Right.  I want to confirm that you paid

8  $10,000 cash down-payment?

9      THE DEFENDANT:  Initially.  The initial payment was

10  $10,000 and now I pay $498 per month.

11      THE COURT:  What was of the trade-in value of your

12  car?

13      THE DEFENDANT:  Only the $10,000?

14      THE COURT:  All right.  So I need you to -- so you

15  didn't put any money down.  You got a trade-in value; is that

16  correct?  That is what I am trying to clarify.

17      THE DEFENDANT:  No, I did not get any money.  It was

18  just worth $10,000 and now I have to pay the $498.  I did not

19  get any money.

20      THE COURT:  Quick question.  Does he speak Portuguese

21  or Spanish?

22      THE INTERPRETER:  Your Honor, from the interpreter, I

23  would defer to Mr. CRD, but it is our understanding that he

24  actually is a native Portuguese speaker.  He stated that he

25  speaks Spanish.  There were conversations with possible counsel

```
 1   and also with Mr. CRD.

 2             THE COURT:  Mr. CRD?  With Mr. Worldwide.

 3             Okay.  Let me just confirm with him.

 4             Mr. Vairo, I just want to confirm.  I could detect

 5   from your accent you are speaking Spanish.  I could understand

 6   you fluently, but I want to confirm on the record that you are

 7   okay proceeding with a Spanish interpreter, as opposed to a

 8   Portuguese interpreter.

 9             THE DEFENDANT:  Yes.  I am understanding what she is

10   saying.

11             THE COURT:  Yes, as I am you.  So we're good.

12             THE DEFENDANT:  Thank you.

13             THE COURT:  In the future if you would prefer to have

14   a Portuguese interpreter, you've got to let us know; okay?

15             THE DEFENDANT:  Okay.

16             THE COURT:  So back to that.

17             The $10,000 you did not put down.  It was the trade-in

18   value of whatever car you gave in, correct?

19             THE DEFENDANT:  I had a vehicle and I sold it and I

20   got $10,000 for it.  And so that is what I paid in order to

21   make the first payment for this vehicle.

22             THE COURT:  Okay.  So you got $10,000 for the car that

23   you sold?

24             THE DEFENDANT:  Yes.

25             THE COURT:  All right.  Thank you.
```

1          In addition to the Tesla that you purchased and we

2  just discussed, and for which you are paying $498 a month, do

3  you have any other cars, trucks, or vehicles?

4          THE DEFENDANT:  No.

5          THE COURT:  You don't have any trucks in connection

6  with your business, for example?

7          THE DEFENDANT:  No, I had a van cargo, which is the

8  one that I sold and I got $10,000 for it because there was some

9  damage to it.

10         THE COURT:  Other than the van, the cargo van that you

11 sold, no other trucking equipment in connection with the

12 business or you personally?

13         THE DEFENDANT:  No.

14         THE COURT:  All right.  Do you have any money in the

15 bank?

16         THE DEFENDANT:  Yes.  I have about $700 in my personal

17 account.  And in the business account I must have maybe a

18 little bit less than $2,000.  I don't know exactly.

19         THE COURT:  All right.  Do you have any money saved at

20 home?

21         THE DEFENDANT:  No.

22         THE COURT:  Do you have any money in a safe deposit

23 box?

24         THE DEFENDANT:  No.

25         THE COURT:  Do you have any money that is yours, but

1  that someone else is holding for you?  Like in somebody else's

2  custody?

3            THE DEFENDANT:  No.

4            THE COURT:  Do you have any assets valid at $5,000 or

5  more?  Assets could be any personal property that you own,

6  jewelry.  You know we talked about the car already.  Jewelry,

7  art, work, anything, or real property; land, a condo, house,

8  valued at $5,000 or more?

9            THE DEFENDANT:  No.

10            THE COURT:  All right.  Do you pay rent?

11            THE DEFENDANT:  No.

12            THE COURT:  Where do you live that you don't pay rent?

13            THE DEFENDANT:  At my wife's property, which she had

14  before she married me, it's an apartment.

15            THE COURT:  So is this your current wife or your

16  ex-wife?  I'm sorry.  I didn't hear that.

17            THE DEFENDANT:  No, my current wife.

18            THE COURT:  Okay.  So you married and you and your

19  spouse live in an apartment?

20            THE DEFENDANT:  Yes.

21            THE COURT:  And it is paid for?

22            THE DEFENDANT:  She started paying for it before she

23  married me.

24            THE COURT:  Okay.  And it is your wife's property and

25  not your property?

1      THE DEFENDANT:  Yes, correct.

2      THE COURT:  All right.  And you don't pay any rent or

3  a mortgage payment?

4      THE DEFENDANT:  No, there is no mortgage.  The only

5  payment is the condo association fee, which is about $500 and

6  that includes maintenance.

7      THE COURT:  And do you split that payment with your

8  wife?

9      THE DEFENDANT:  Yes.  Sometimes yes and sometimes no.

10  Because sometimes I will buy food and she will pay the condo

11  fee and sometimes we will do it the other way around.

12      THE COURT:  Approximately how much are your monthly

13  expenses?

14      THE DEFENDANT:  For the house, more or less a

15  thousand.  For the car about $500.  Insurance around $180.  So

16  all in all about $2,000 to $2,500 maximum per month.

17      THE COURT:  Expenses.  In addition to those normal

18  expenses, do you have any credit card or other debts or

19  expenses that you want me to consider?

20      THE DEFENDANT:  I have a credit card, but I pay it

21  because I use the credit card to buy the products and then I

22  pay it.

23      THE COURT:  So there is no outstanding balance,

24  correct?

25      THE DEFENDANT:  I have a balance that is pending for

1    the future, but not currently.  There is no balance currently.

2          THE COURT:  All right.  Considering we did receive

3    that call from Attorney Razan.  We don't know whether he is

4    involved in the case or will be involved in the case or not, I

5    am going to appoint the Public Defender's Office provisionally.

6          I want the record to reflect that I have not made a

7    final determination on Mr. Vairo's ability to pay.  I am

8    appointing the Public Defender's Office for purposes of

9    removal.  I should have done that earlier.

10         MR. WALLACE:  Good morning, Your Honor.  Wesley

11   Wallace --

12         THE COURT:  Mr. Wallace, good morning, sir.

13         MR. WALLACE:  -- from the Public Defender's Office.

14         If I may?  Before we continue any further, I did just

15   get off the phone with Miss Razan.  She did confirm with me

16   that they will be taking over this case.

17         They are asking if it could be continued until this

18   Friday and someone from their firm will be able to handle the

19   I.D., removal, and potential detention hearing.

20         They wanted me to advise the Court that the only

21   reason they had yet to file a notice of appearance is because

22   the case was previously sealed.

23         I communicated to them that it has been unsealed today

24   and they communicated to me to let the Court know that they

25   will be filing a notice of appearance by the end of the day.

1           THE COURT:  Thank you.

2           Please tell me that you just found this out.

3           MR. WALLACE:  Literally that's why I was going

4    outside.

5           THE COURT:  Thank goodness.  Otherwise --

6           MR. WALLACE:  I promise I would have stopped this

7    colloquy --

8           THE COURT:  Thank you.

9           MR. WALLACE:  -- a lot sooner.

10          THE COURT:  Thank you.

11          MR. WALLACE:  Absolutely, Your Honor.

12          THE COURT:  I just want to confirm that Mr. Vairo

13   understands what happens.  Mr. Wallace spoke to the attorney

14   that I mentioned previously.  That attorney is going to be

15   appearing on your behalf.

16          The Government's position on bond?

17          MS. CHERON:  Yes, Your Honor.

18          The Government is moving for detention, Your Honor,

19   under risk of flight under 18 USC 3142(f)(2)(a).

20          Your Honor, we do have an agent here who flew in from

21   Nevada.  I did speak to her two seconds ago once I heard about

22   the attorney.  She has no problem with staying put until we

23   know if we are proceeding with that detention hearing in the

24   next few days or a week from now.

25          THE COURT:  All right.  Thank you.

1          Well, it looks -- Mr. Wallace, you said Friday at what

2   time?

3          MR. WALLACE:  They didn't ask for a time.

4          They just said Friday.  Whenever the calendar is set

5   forth they will make sure that they will be appearing.

6          THE COURT:  Do we have other hearings in the morning?

7   Friday?

8          THE COURTROOM DEPUTY: (No audible response.)

9          THE COURT:  All right.  So we will schedule this

10  matter for Friday morning at 10:30 before me.

11         It may well be, Miss Cheron, that we will have the

12  detention there.  So is the agent in the back of the room, if

13  she is listening, but if Mr. or Miss Razan needs extra time,

14  she will advise us.

15         Is that correct, Mr. Wallace?

16         MR. WALLACE:  That is correct, Your Honor.

17         I will provide them with your Court's instructions and

18  let them know what time and what date the hearing is set for.

19         THE COURT:  Also, I would strongly encourage the

20  Government to speak with the attorney because, as I advised Mr.

21  Vairo, he has to make a decision whether he wants to have an

22  identity hearing, whether he wants to have a removal hearing,

23  or whether he is willing to waive those and have a detention

24  hearing there instead of here.

25         So it would be good if counsel for the Government

1    spoke with that attorney in advance so that if this matter is

2    not going forward, but rather that it be a stipulation, we

3    could move it to the 11:00 calendar.

4         MS. CHERON:  Yes.

5         MR. WALLACE:  I will provide Miss S the contact

6    information first for the attorney.

7         MS. CHERON:  Yes, Your Honor.

8         MR. WALLACE:  Absolutely.

9         MS. CHERON:  And the AUSA who will be handling it is

10   Mr. Corey O'Neal.

11        MR. WALLACE:  Okay.

12        MS. CHERON:  I will provide him with all the

13   information for --

14        THE COURT:  Perfect.  And he is to reach out for the

15   two of them to communicate.

16        MS. CHERON:  Yes.

17        THE COURT:  And then we will take it from there.

18        MS. CHERON:  Yes, Your Honor.

19        MR. WALLACE:  I will provide --

20        THE COURT:  So, Agent, you will be in town through at

21   least on Friday and maybe you will get to go to South Beach on

22   the weekend.  We'll see.

23        MR. WALLACE:  And Your Honor, if you would like, I

24   could provide the spelling first and last name for the two

25   attorneys who are going to be --

1        THE COURT:  Yes, that will be helpful.

2        MR. WALLACE:  The first one is Laura Marino; last name

3   is spelled M-A-R-I-N-O and the second attorney is Jude; J-U-D-E

4   and I am going to spell the last name; F-A-C-C-I-D-O-M-O.

5        THE COURT:  Faccidomo.

6        MR. WALLACE:  Faccidomo.

7        THE COURT:  It could be Faccidomo.  No, it is

8   Faccidomo.

9        All right.  Mr. Vairo, do you understand what is going

10  on here, sir?  Do you have any questions?

11       THE DEFENDANT:  Yes, I do have a question.

12       THE COURT:  Do you want to ask me or do you want to

13  ask Mr. Wallace?  If you want to ask Mr. Wallace without me

14  listening --

15       THE DEFENDANT:  Mr. Wallace, why --

16       THE COURT:  Translator, if you can go over there.

17       THE INTERPRETER:  Of course, Your Honor.

18  (Proceedings resumed:)

19       THE COURT:  All right.  So we are back on the record.

20       Mr. Vairo, you had an opportunity to speak with Mr.

21  Wallace with the help of the interpreter.

22       Are we all squared away?

23       MR. WALLACE:  We are, Your Honor.

24       Mr. Vairo just wanted me to put on the record that he

25  has a kidney condition and he is currently experiencing severe

1  pain as a result of that.  And he is requesting that he be able

2  to have access to pain medication while in custody so the side

3  effects do not exacerbate and he does not need to go to the

4  hospital.

5       THE COURT:  All right.  I will certainly -- the

6  Marshal is here and he heard what was being said, obviously.

7       I hope that his condition does not deteriorate to the

8  extent that he has to get the prescriptions that he needs to

9  take.  The Marshals need to look into that.  Obviously, we

10 don't want you to have a kidney issue and end up in the

11 hospital.

12      So I am alerting the Marshals that they need to do

13 whatever they need to do to get it checked out, or give him

14 access to his medications to the extent possible under the law

15 as you are required to do.

16      MR. WALLACE:  Thank you, Your Honor.

17      THE COURT:  All right.  All of that being said, I will

18 see either Mr. Wallace, or Miss Marino, or Miss Faccidomo in

19 court on Friday at 10:30.

20      MS. CHERON:  Yes, Your Honor.

21      THE COURT:  All right.  Thank you.  I will see

22 everybody back then.

23      MS. CHERON:  Yes, Your Honor.  Have a good day.

24      THE COURT:  Mr. Wallace, I assume somebody from your

25 office will be here in case this falls through the cracks?

1          MR. WALLACE:  That is correct, Your Honor.

2          It will not be me, Your Honor.  I will be out of the

3  state, but someone will be here, absolutely.

4          THE COURT:  Thank you very much.

5          I think that concludes our calendar; is that correct?

6          Okay.  All right.  Thanks everyone.  See you all

7  tomorrow morning.

8          MR. WALLACE:  Thank you very much, Your Honor.

9          THE COURT:  Good luck, Mr. Vairo.

10          (Thereupon, the following proceeding concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                              CERTIFICATE

4

5          I hereby certify that the foregoing transcript is an

6   accurate transcript of the audiotape recorded proceedings in

7   the above-entitled matter.

8

9

10

11
     03/24/25                    Bonnie Joy Lewis,
12                        Registered Professional Reporter
                             CASE LAW REPORTING, INC.
13                          7001 Southwest 13 Street,
                           Pembroke Pines, Florida 33023
14                               954-985-8875

15

16

17

18

19

20

21

22

23

24

25